

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

APR 1 2011

JUDGE ELAINE E. BUCKLO
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 487 |
| vs. | ) | Judge Elaine E. Bucklo |
| | ) | |
| JESUS GONZALEZ | ) | |

### PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant JESUS GONZALEZ, and his attorney, STEPHEN EBERHARDT, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with one count of possession with intent to distribute 500 grams or more of cocaine and 5 grams or more of cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Section 841(a)(1) (Count One), and one count of possession of a handgun in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the indictment: Count One, which charges defendant with possession with intent to distribute 500 grams or more of cocaine and 5 grams or more of cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Section 841(a)(1); and Count Two, which charges defendant with possession of a handgun in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).  In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the indictment.  In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.     With respect to Count One of the indictment: On or about June 18, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant, JESUS GONZALEZ ("GONZALEZ"), did knowingly and intentionally possess with intent to distribute controlled substances, namely, 500 grams or more of mixtures and substances containing cocaine, and 5 grams or more of mixtures and substances containing cocaine base in the form of crack cocaine, Schedule II Narcotic Drug Controlled Substances, in violation of Title 21, United States Code, Section 841(a)(1).

2

Specifically, on or about June 18, 2008, GONZALEZ knowingly possessed, at his residence in Chicago, 4085 grams of cocaine (located in the southeast bedroom closet, living room bar, northwest bedroom east closet and west closet, and on the hallway floor), approximately 22 grams of cocaine base in the form of crack cocaine ("crack cocaine") (located in the southeast bedroom closet and on the hallway floor), and approximately $254,214 in cash drug proceeds (located in the northwest bedroom and the living room bar) from his house. GONZALEZ knowingly and intentionally possessed and stored the cocaine and crack cocaine in his house with the intent to distribute the drugs to his own wholesale and retail customers.

b.     With respect to Count Two of the indictment: On or about June 18, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant, GONZALEZ, in furtherance of a drug trafficking crime, namely, knowingly and intentionally possessing with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), as charged in Count One of the indictment, did knowingly possess a firearm, namely, a Ruger handgun, model P89NC, bearing serial number 310 - 11838, in violation of Title 21, United States Code, Section 924(c)(1)(A).

More specifically, on June 18, 2008, GONZALEZ, as described above, knowingly and intentionally possessed approximately 4,085 grams of cocaine, approximately 22 grams of crack cocaine, and approximately $254,214 in cash drug proceeds in his house. Within the northwest bedroom inside GONZALEZ's residence, the same bedroom containing the $254,214 in cash drug proceeds and containing a closet holding

3

cocaine, GONZALEZ stored a Ruger handgun, model P89NC, which he possessed to protect himself and his narcotics.

7.     Defendant, for purposes of computing his sentence under Guideline § 1B1.2, stipulates to having committed the following additional offense:

Between in or about early 2008 and June 2008, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant, JESUS GONZALEZ, did knowingly and intentionally possess with intent to distribute a controlled substance, namely, 5 kilograms or more of a mixture and substance containing cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

More specifically, defendant, prior to June 18, 2008, possessed at least approximately 9 kilograms of cocaine that he distributed to his various wholesale and retail customers prior to June 18, 2008. For those kilograms of cocaine, the defendant charged his customers between approximately $25,000 to approximately $28,000 per kilogram of cocaine. In addition, defendant acknowledges that between approximately early 2008 and June 2008, he distributed cocaine to various customers, including at least approximately 37.5 kilograms of cocaine to Individual A and his/her associates. Defendant further acknowledges that he also charged Individual A between approximately $25,000 to approximately $28,000 per kilogram of cocaine. Defendant acknowledges that the money seized from his residence on 18, 2008 related to the stipulated offense conduct.

8.     Defendant disclosed the following self-incriminating information to the government pursuant to the terms of a proffer agreement. Pursuant to Guideline

4

§1B1.8(a), this information may not be used in determining the applicable guideline range for defendant:

In or about 2000, GONZALEZ began selling cocaine in ounce quantities, and by approximately 2003 or 2004, GONZALEZ began obtaining kilogram quantities of cocaine from various sources of supply (the "cocaine suppliers"). Between approximately 2003 or 2004 and approximately 2008, the cocaine suppliers "fronted" the cocaine to GONZALEZ, meaning provided the cocaine to GONZALEZ on a consignment basis. Those sources of supply provided cocaine to GONZALEZ until approximately late 2006 or early 2007. Between approximately 2006 and June 2008, GONZALEZ obtained no less than 150 kilograms of cocaine from the cocaine suppliers.

Then, in approximately late 2006 or early 2007, GONZALEZ began obtaining kilogram quantities of cocaine from Rafael Montano ("Montano"). Montano, like GONZALEZ, was a wholesale distributor of kilogram quantities of cocaine. GONZALEZ and Montano called each other whenever either of them was short on supply or had extra kilograms of cocaine for sale. From the time they met in approximately late 2006 or early 2007 until approximately June 2008, GONZALEZ sold Montano approximately 2-3 of kilograms of cocaine and Montano sold GONZALEZ 4-5 kilograms of cocaine. In addition, on at least two occasions, GONZALEZ provided Montano with a total of just over approximately one kilogram of cocaine through one of Montano's associates, Individual B.

GONZALEZ sold cocaine to a number of customers, including Individual A and Individual C. GONZALEZ regularly supplied Individual A and Individual C with up

to 10-15 kilograms of cocaine on multiple occasions. Individual A and his/her associates, when picking up kilograms of cocaine from GONZALEZ, sometimes cooked some of the cocaine into crack cocaine in front of GONZALEZ before taking all of the drugs.

In approximately early 2008, on at least five occasions, Montano told GONZALEZ that he was receiving a shipment of produce that contained narcotics within it. One shipment contained approximately 2,000 pounds of marijuana, and Individual B told GONZALEZ that other shipments contained kilograms of cocaine. Around this time period, GONZALEZ also learned that Montano began dealing in kilogram quantities of heroin.

9. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

10. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a. Count One carries a maximum sentence of 40 years' imprisonment, and a statutory mandatory minimum sentence of 5 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count One also carries a maximum fine of $2,000,000. Defendant further

understands that with respect to Count One the judge also must impose a term of supervised release of at least four years, and up to any number of years, including life.

b.      Count Two carries a maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 5 years.  The sentence of imprisonment on Count Two is required to be consecutive to any other term of imprisonment imposed on the defendant.  Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count.  Count Two also carries a maximum fine of $250,000.  Defendant further understands that with respect to Count Two, the judge also may impose a term of supervised release of not more than five years.

c.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

d.      Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is life imprisonment, and the minimum sentence is 10 years' imprisonment.  In addition, defendant is subject to a total maximum fine of $2,250,000, a period of supervised release, and special assessments totaling $200.

## Sentencing Guidelines Calculations

11.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

7

12.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

        a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2010 Guidelines Manual.

        b.      **Offense Level Calculations.**

Count One

        i.      The amount of controlled substances involved in Count One for which defendant is accountable is approximately 22 grams of crack cocaine and approximately 4,085 grams of cocaine. Pursuant to Application Note 10(B) to Guideline § 2D1.1, when determining the offense level for an offense involving different controlled substances, each drug is to be converted to its marijuana equivalent, combined, and then referred to the Drug Quantity Table in § 2D1.1 to obtain the combined offense level. Combining the marijuana equivalents for the cocaine and crack cocaine for which the defendant is accountable for with respect to Count One is approximately 895.5 kilograms of marijuana.

Count Two

        ii.     The Guideline applicable to the offense is Guideline § 2K2.4.

        iii.    As a result of defendant's conviction on Count Two, pursuant to 18 U.S.C. § 924(c)(1)(A)(I) and Guideline § 2K2.4(b), the Court should impose a

sentence of 60 months' imprisonment, to be served consecutive to any other term of imprisonment imposed on the defendant.

Stipulated Offense

iv.    The amount of mixtures containing cocaine involved in the stipulated offense for which the defendant is accountable is approximately 37.5 kilograms of cocaine.  The marijuana equivalents for the cocaine for which the defendant is accountable for with respect to the Stipulated Offense is approximately 7500 kilograms of marijuana.

v.    Pursuant to Guideline § 3D1.2(d), Count One and the Stipulated Offense are place in a single group because the offense level is determined largely on the basis of the total quantity of substance involved.

vi.    Pursuant to Guideline § 3D1.3(b), the offense level applicable to the Group is the offense level corresponding to the aggregated quantity as outlined in paragraphs 8(b)(I) and (iv) above.

vii.    The base offense level for the Counts in the Group is 34, pursuant to Guideline § 2D1.1(a)(5) and (c)(3) because the amount of controlled substances involved in Count One and the Stipulated Offense for which defendant is accountable is the equivalent of more than 3,000 kilograms but less than 10,000 kilograms of marijuana.

viii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct.  If the government does not receive additional evidence in conflict with this provision, and if

9

defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        ix.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

        c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

        d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government and his conviction of Count One, the defendant's anticipated advisory Sentencing Guidelines range of 108 to 135 months' imprisonment, in addition to any supervised release and fine the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 5 years' imprisonment on Count One, as well as a statutory minimum sentence of five

10

years' imprisonment on Count Two to run consecutive to any other term of imprisonment imposed on the defendant.

        e.      Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

        f.      Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

13.     Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois.  This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

14.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation.  If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline § 5Kl.l and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and the statutory minimum sentence and recommend that the Court sentence the defendant to a term of imprisonment in the custody of the Bureau of Prisons equivalent to 50 percent of the combined total of (a) the low end of the applicable Guideline range or the statutory minimum sentence of 5 years on Count One, whichever is higher, and (b) the statutory minimum consecutive term of imprisonment of 5 years on Count Two.  In addition, if the government moves the Court, pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the combined Guideline range, as set forth in this paragraph, this Agreement will be governed, in part, by Federal Rule of Criminal

12

Procedure 11(c)(1)(C) in that the parties have agreed that the sentence imposed by the Court shall in no event be less than a term of imprisonment in the custody of the Bureau of Prisons of 60 months imprisonment. Other than the agreed five-year minimum term of imprisonment, the defendant shall be free to recommend any sentence that he deems appropriate. Other than the agreed minimum term of imprisonment, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. Defendant understands that the decision to depart from the applicable guidelines range and statutory minimum sentence rests solely with the Court. If the Court accepts the agreed minimum term of imprisonment set forth, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d) and (e). If, however, the Court rejects the agreed minimum term of imprisonment set forth herein, thereby rejecting this plea agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this plea agreement.

15. It is understood by the parties that the sentencing judge may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

16. If the government does not move the Court, pursuant to Sentencing Guideline § 5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and the statutory minimum sentence, as set forth above, the preceding paragraph of this plea agreement will be inoperative, both parties shall be free to

13

recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline § 5K1.1 and 18 U.S.C. § 3553(e).

17. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

19. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the forfeiture allegation as to defendant.

Forfeiture

20. On or about July 3, 2008 and July 11, 2008, the DEA commenced administrative forfeiture proceedings against the property and proceeds identified in the forfeiture allegations of the indictment, namely, a Ruger handgun, model P89NC, bearing serial number 310 - 11838 and $254,214 in United States Currency, and on July 17, 2008, the DEA commenced administrative forfeiture proceedings against a 2004 Volkswagen Toureg vehicle, bearing VIN WVGBC67L54D009208 (collectively,

14

the "seized property"). Defendant acknowledges that he had notice of the administrative forfeiture proceedings, did not file a claim, and understands that declarations of forfeiture have been entered, extinguishing any claims he may have had in the seized property. Furthermore, defendant affirmatively relinquishes all right, title, and interest he may have had in the seized property. Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

21.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 487.

22.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

23.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights.**  Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

I.     The trial could be either a jury trial or a trial by the judge sitting without a jury.  However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random.  Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately.  The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

16

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf.  If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.  A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.  If defendant desired to do so, he could testify in his own behalf.

viii.     With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b.     **Waiver of appellate and collateral rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had

17

exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

18

c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

24.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

25.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

26.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is

sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

27.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

### Conclusion

28.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

29.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement.

Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

30.    Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

31.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

32.    Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 4/1/2011

PATRICK J. FITZGERALD
United States Attorney

JESUS GONZALEZ
Defendant

ERIKA CSICSILA
Assistant U.S. Attorney

STEPHEN EBERHARDT
Attorney for Defendant

21